UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:21-CR-00238-01** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JACOB BROWN** | **MAGISTRATE JUDGE MCCLUSKY** |

### MEMORANDUM ORDER

Pending before the Court is a Motion in Limine to Preclude Testimony From Defense Witness, Dr. William George, or, in the Alternative, for a *Daubert* Hearing [Doc. No. 61] filed by the United States of America ("the Government"). Defendant Jacob Brown ("Brown") filed a response in opposition [Doc. No. 70].

For the reasons set forth herein, the Government's Motion is **DENIED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

On September 23, 2021, a grand jury charged Brown with one count of deprivation of civil rights under color of law, pursuant to 18 U.S.C. § 242.[1] The indictment asserts that Brown, "while acting under color of law as a Trooper for the Louisiana State Police, willfully deprived arrestee A.B." of "the right to be free from a law enforcement officer's use of unreasonable force during an arrest."[2]

After A.B.'s arrest, he was taken to St. Francis Medical Center to be treated for any injuries.[3] At the medical center, a preliminary urine screen was performed, showing positive results for traces of cocaine and marijuana.[4]

---

[1] [Doc. No. 1]
[2] [Id. at p.1]
[3] [Doc. No. 61 at p.2]
[4] [Id. at p.3]

In the instant motion, the Government asks this Court to preclude defense expert Dr. William George from testifying at trial.[5] Specifically, the Government argues that Dr. George cannot "testify about the preliminary toxicology screen conducted at the hospital following the arrest, and offer his opinion that the reported findings 'indicate recent acute and/or chronic cannabinoid (marijuana) and cocaine use by A.B.'"[6] The Government further argues that even if Dr. George's testimony satisfied Federal Rule of Evidence 702, the proposed testimony is irrelevant and prejudicial under Rules 401 and 403.[7]

In response, Brown asserts that Dr. George is "a well-qualified expert in toxicology and pharmacology" whose testimony is central to the issue of whether Brown's use of force "was objectively reasonable considering all the facts and circumstances confronting the officer."[8] Brown argues that "the results of A.B's drug test are scientifically reliable, relevant, and admissible evidence of these facts and circumstances."[9]

## II. LAW AND ANALYSIS

### A. Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

---

[5] [Id. at p.1]
[6] [Id.]
[7] [Id. at p.2]
[8] [Doc. No. 70 at p.1]
[9] [Id.]

>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The *Daubert* holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. *Id.* at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. *Id.* at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). Thus, the *Daubert* factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702.

3

*Moore v. Ashland Chem., Inc.*, 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

### B. Federal Rules of Evidence 401, 402, and 403

Evidence is relevant if it "has a tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible and relevant evidence is admissible unless provided otherwise by the United States Constitution, a federal statute, the rules of evidence, or other rules prescribed by the Supreme Court of the United States. Fed. R. Evid. 402.

The court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As virtually all evidence is prejudicial, or otherwise it would not be material, "unfair prejudice" is not to be equated with testimony simply adverse to the opposing party; the prejudice must be unfair. *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977). Further, the trial court's discretion to admit or exclude evidence is generally broad, but competent evidence cannot be excluded without a sound and acceptable reason. *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334 (5th Cir.), *decision clarified on denial of reh'g*, 620 F.2d 464 (5th Cir. 1980).

### C. Analysis

The Government argues that, under Rule 702, Dr. George's testimony is unreliable because it is apparently based on a "single unconfirmed preliminary drug screen," which does not provide the proper background or temporal data for Dr. George to provide helpful testimony to the jury.[10] The Government further asserts that Dr. George's expert report fails to provide any explanation

---

[10] [Doc. No. 61 at p.6]

for the conclusion that A.B.'s drug use was "chronic."[11] In response, Brown argues that Dr. George has provided sufficient explanation for his reliance on the preliminary drug screen and that the Government places too much emphasis on the disclaimer attached to the drug screen.[12] Brown points to Dr. George's Declaration[13] in support of the reliability of Dr. George's methodology, as well as his qualifications in the fields of toxicology and pharmacology.

This Court agrees with Brown and finds that Dr. George's proposed testimony meets the requirements of Rule 702. There is nothing to suggest that Dr. George is unqualified or that his methodology is unsound. And the Government does not offer any argument regarding the unreliability of toxicology screens, other than to highlight the disclaimer provided by the hospital in conjunction with the screen.[14] Rather, the Government appears to disagree with Dr. George's general analysis of A.B.'s toxicology screen. Such disagreements are not suited to a *Daubert* motion. The Government's arguments concerning the effects of cocaine on the human body, as well as the duration of those effects, are better suited to vigorous cross-examination.[15] *See Daubert*, 509 U.S. at 596. Thus, the Government's request for a *Daubert* hearing is denied, and Dr. George will be permitted to testify as to his analysis of A.B.'s urine screen results.

The Government also argues that A.B.'s toxicology report is irrelevant because "there is no evidence that [Brown] was familiar with A.B. at all, that he knew, at the time of arrest, that A.B. was a regular drug user, or that he believed A.B. was on drugs at the time of the assault."[16] In response, Brown argues that "A.B.'s behavior dictated the level of force required to safely

---

[11] [Id. at p.8]
[12] [Doc. No. 70 at pp.4–5]
[13] [Doc. No. 70-1]
[14] [Doc. No. 61 at p.3]
[15] *See* [Id. at pp.7–8]
[16] [Id. at p.9]

5

apprehend him," and therefore, "all evidence of A.B.'s behavior is certainly probative of the force needed."[17]

This Court agrees with Brown that the toxicology report is relevant to the central issue of the reasonableness of Brown's use of force while arresting A.B. Similar to its arguments regarding Dr. George's proffered testimony, the Government's arguments concerning Brown's knowledge of A.B.'s condition and what he perceived at the time of arrest are better suited to cross-examination and the introduction of contrary evidence. The Court further agrees with Brown that any prejudicial effect is likely outweighed by the probative value of this evidence. *See Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154 (5th Cir. 1981); *United States v. Thompson*, 615 F.2d 329, 333 (5th Cir. 1980) ("Rule 403 does not permit exclusion of evidence because the judge does not find it credible."). The potential effect of drugs on A.B.'s behavior and the subsequent effect on Brown's actions are facts and circumstances for the jury to analyze, not the Court.

### III.  CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that the Government's Motion in Limine [Doc. No. 61] is **DENIED**.

MONROE, LOUISIANA, this 19th day of July, 2023.

_____
Terry A. Doughty
United States District Judge

---

[17] [Doc. No. 70 at p.6]